# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| LAURA L. HARLIN, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>CAROLYN W. COLVIN, )<br>Acting Commissioner of the Social )<br>Security Administration, )<br>)<br>Defendant. ) | Case No. CIV-15-209-RAW-SPS |

## REPORT AND RECOMMENDATION

The claimant Laura L. Harlin requests judicial review of a denial of benefits by the Commissioner of the Social Security Administration pursuant to 42 U.S.C. § 405(g). She appeals the Commissioner's decision and asserts the Administrative Law Judge ("ALJ") erred in determining she was not disabled. For the reasons set forth below, the Commissioner's decision should be REVERSED and the case REMANDED to the ALJ for further proceedings.

### Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment[.]" 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if h[er] physical or mental impairment or impairments are of such severity that [s]he is not only unable to do h[er] previous work but cannot, considering h[er] age, education, and work experience, engage in any other kind of substantial gainful

work which exists in the national economy[.]" *Id*. § 423 (d)(2)(A). Social security regulations implement a five-step sequential process to evaluate a disability claim. *See* 20 C.F.R. §§ 404.1520, 416.920.[1]

Section 405(g) limits the scope of judicial review of the Commissioner's decision to two inquiries: whether the decision was supported by substantial evidence and whether correct legal standards were applied. *See Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997). Substantial evidence is "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971), *quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938); *see also Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996). The Court may not reweigh the evidence or substitute its discretion for the Commissioner's. *See Casias v. Sec'y of Health & Human Svcs.*, 933 F.2d 799, 800 (10th Cir. 1991). But the Court must review the record as a whole, and "[t]he substantiality of evidence must take into account whatever in the record fairly detracts from its weight."

---

[1] Step One requires the claimant to establish that she is not engaged in substantial gainful activity. Step Two requires the claimant to establish that she has a medically severe impairment (or combination of impairments) that significantly limits her ability to do basic work activities. If the claimant *is* engaged in substantial gainful activity, or her impairment *is not* medically severe, disability benefits are denied. If she *does* have a medically severe impairment, it is measured at step three against the listed impairments in 20 C.F.R. Part 404, Subpt. P, App. 1. If the claimant has a listed (or "medically equivalent") impairment, she is regarded as disabled and awarded benefits without further inquiry. Otherwise, the evaluation proceeds to step four, where the claimant must show that she lacks the residual functional capacity ("RFC") to return to her past relevant work. At step five, the burden shifts to the Commissioner to show there is significant work in the national economy that the claimant *can* perform, given her age, education, work experience, and RFC. Disability benefits are denied if the claimant can return to any of her past relevant work or if her RFC does not preclude alternative work. *See generally Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

*Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951); *see also Casias*, 933 F.2d at 800-01.

**Claimant's Background**

The claimant was born June 15, 1966, and was forty-seven years old at the time of the most recent administrative hearing (Tr. 548). She completed high school and vocational training, and has worked as a personnel clerk, receptionist, worker/machine operator, cashier II, and hairdresser (Tr. 179, 521). The claimant alleges that she has been unable to work since October 1, 2007, due to back, knee, and shoulder problems (Tr. 174).

**Procedural History**

On June 12, 2008, the claimant applied for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401-434, and for supplemental security income benefits under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-85. Her applications were denied. ALJ John W. Belcher conducted an administrative hearing and determined that the claimant was not disabled in a written opinion by ALJ David Engle for ALJ Belcher dated November 22, 2010 (Tr. 13-27). The Appeals Council denied review, on appeal to this Court the Commissioner moved to remand for proper consideration of an opinion by Dr. Wojciech Dulowski in the record (Tr. 628-630). Accordingly, this Court reversed the decision of the ALJ in Case No. CIV-11-371-RAW-SPS, and remanded to the ALJ (Tr. 627-628). On remand, ALJ Belcher held a second administrative hearing and again determined that the claimant was not disabled in a written opinion dated October 24, 2013. The Appeals Council again denied review, so

ALJ Belcher's 2013 opinion is the Commissioner's final decision for purposes of this appeal.  *See* 20 C.F.R. §§404.981, 416.1481.

### Decision of the Administrative Law Judge

The ALJ made his decision at step five of the sequential evaluation.  He found that the claimant had the residual functional capacity (RFC) to perform less than the full range of light work, *i. e.*, she could lift/carry twenty pounds occasionally and ten pounds frequently with pushing/pulling limitations consistent with the lift/ carry limitations; stand/ walk for two to three hours in an eight-hour workday; sit for up to eight hours in an eight-hour workday, provided it would be no more than forty minutes at a time; and change positions at will during the normal workday.  Additionally, he found she could occasionally climb steps, balance, bend, stoop, kneel, crouch, and crawl, up to one third of the day; but she could not climb ropes, ladders, and scaffolds.  He found she could occasionally reach in all directions.  Finally, he stated that the claimant could perform simple tasks but could have no contact with the public, and no work with high stress jobs such as production quota work or rapid assembly line work (Tr. 509).  The ALJ then concluded that although the claimant could not return to her past relevant work, she was nevertheless not disabled because there was work she could perform, *e. g.*, touch-up screener, optical goods assembler, and semi-conductor bonder (Tr. 522).

### Review

The claimant argues that the ALJ erred by:  (i) failing to find her disabled based on the vocational expert's testimony in relation to her RFC; (ii) failing to provide the requisite "narrative discussion"; (iii) improperly evaluating her credibility by

misconstruing her daily activities and their significance; (iv) failing to properly weigh the opinions of Dr. Dulowski, Dr. Hickman, and Dr. Jenkins; (v) failing to properly weigh Dr. Clark's opinion from the second administrative hearing; and (vi) ignoring the assessment from the therapist, Clinton Sago. The undersigned Magistrate Judge finds that the ALJ *did fail* to properly consider the claimant's mental impairments in his evaluations of the evidence as argued in the claimant's fourth and sixth contentions, and the decision of the Commissioner should therefore be reversed.

The ALJ found that the claimant had the severe impairments of lumbosacral degenerative disc disease, right knee degenerative joint disease, shoulder RTC, obesity, anxiety disorder, depressive disorder, and schizophrenia with bipolar trait (Tr. 507). The record contains treatment record from Dr. Wojciech Dulowski in early 2009, which indicate he treated the claimant for chronic pain syndrome, major depression, and general anxiety disorder (Tr. 380). Notes reflect that his treatment was largely medication management, which she reported some success with in addition to continued stress and anxiety, as well as problems sleeping (Tr. 380-387). On March 29, 2010, Dr. Dulowski completed a physical Medical Source Statement (MSS) as to the claimant's ability to do work, indicating that she could lift twenty pounds occasionally and ten pounds frequently, stand/walk/sit less than two hours in an eight-hour workday, and that she could perform limited reaching of the upper extremities (Tr. 410). He further indicated that she could perform postural limitations 1/3 of the day (occasionally), that she had limited manipulative limitations in all categories, and that she should avoid concentrated

exposure to all environmental limitations (Tr. 411). In support, he referenced the claimant's low back pain, chronic pain syndrome, depression, and anxiety (Tr. 411).

On September 30, 2010, Dr. John Hickman, Ph.D., conducted a mental status evaluation of the claimant (Tr. 473). He administered a number of tests, and determined that she had a borderline full scale IQ of 77, with a verbal IQ of 81 and performance IQ of 76 (Tr. 475). After a number of other tests, Dr. Hickman concluded the claimant was functioning in the low average range of mental ability for language and borderline range for performance, as well as low average mental flexibility, borderline mental adaptability, and low average somatomotor problem-solving skills (Tr. 478). He assessed her on Axis I with bipolar disorder (depressed type), anxiety disorder with panic attacks, PTSD, and chronic pain syndrome associated with both psychological factors and a general medical condition. On Axis II, he stated she had features of a dependent and histrionic personality disorder, and he assessed her with a GAF of 60 (Tr. 478). He stated that he did not expect much change to the claimant's functioning, that she had a fair prognosis, although she may improve with continued medication management. However, he believed that even if she improved with medications, she probably equaled a listing based on the combined effects of her mood, anxiety, and sleep disorders interacting with her chronic pain and physical limitations (Tr. 479). He completed an MSS indicating seven moderate limitations, but stated that his assessment was done based only on her mental and mood difficulties without consideration of reported chronic pain and physical limitations that probably further reduced her ability to obtain and maintain employment (Tr. 480-482).

The claimant received mental health treatment at Bill Willis Mental Health Center, with therapists Rhonda Rice and Clinton Sago. On July 7, 2009, she was diagnosed with major depressive disorder, moderate symptoms, and assigned a global assessment of functioning score of 52 (Tr. 424). The following month, she reported to Mr. Sago that relationships had gotten better since she started therapy (Tr. 428). Her chronic pain was noted to be keeping her from working and sleeping (Tr. 430). However, by the end of that month, she reported increased family conflict (Tr. 433). In September 2009, the claimant reported good moods for one week, then "back to screaming and hitting things," and her response to medication was noted as ineffective (Tr. 435). In October 2009, the claimant reported that the last time she and her sister had argued, the claimant had broken her sister's arm (Tr. 437). Notes also reflect that the claimant engaged in self-mutilating by picking and scratching at her arms (Tr. 438). She continued to report some improvements (Tr. 442-448), but on April 9, 2010, she reported throwing an ashtray at her boyfriend and that he had to be rushed to the emergency room and received forty stitches (Tr. 449). Part of her treatment plan involved learning to identify escalating behaviors that lead to abuse (Tr. 449). On April 12, 2010, Clinton Sago completed an MSS as to the claimant's mental limitations. He indicated that the claimant was markedly limited in the ability to understand and remember detailed instructions; maintain attention and concentration for extended periods; perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances; work in coordination with or in proximity to others without being distracted by them; compete a normal workday and work-week without interruptions and psychologically-

based symptoms, and perform at a consistent pace without an unreasonable number and length of rest periods; and the ability to set realistic goals, or make plans independently of others (Tr. 412-413). He further indicated she had six additional moderate limitations, including the ability to get along with co-workers or peers without distracting them or exhibiting behavior extremes and the ability to sustain an ordinary routine without special supervision (Tr. 412-413). He again indicated that the claimant could not respond appropriately to supervision, co-workers, and usual work situations, and stated that she was diagnosed with major depressive disorder, recurrent-moderate (Tr. 413).

On May 28, 2010, Dr. Jeff Jenkins completed a mental MSS in which he indicated that that the claimant had no marked limitations, but was moderately limited in seven areas, including accepting instructions and responding appropriately to criticism from supervisors, getting along with co-workers or peers without distracting them or exhibiting behavioral extremes, and responding appropriately to changes in the work setting (Tr. 471-72). Additionally, he stated that the claimant "is quite impulsive and tends to respond with violence, which should be considered" (Tr. 472). Almost a year later, on March 10, 2011, Dr. Jenkins completed a second mental MSS in which he indicated she had five marked limitations: ability to make judgments on simple work-related decisions, interact appropriately with the public, interact appropriately with supervisors, interact appropriately with co-workers, as well as the ability to complete a normal work-day and work-week without interruptions from psychologically-based symptoms, and to perform at a consistent pace without an unreasonable number and length of rest periods (Tr. 490).

He cited the claimant's impulse control disorder, being a victim of child abuse, bipolar disorder, and borderline personality disorder (Tr. 490).

Although the ALJ found that the claimant's anxiety disorder, depressive disorder, and schizophrenia with bipolar traits were severe impairments, he failed to connect these impairments to his RFC assessment (much less consider all her impairments in combination). *See Timmons v. Barnhart*, 118 Fed. Appx. 349, 353 (10th Cir. 2004) (finding the ALJ should have "explained how a 'severe' impairment at step two became 'insignificant' at step five.") [unpublished opinion]; *see also Hamby v. Astrue*, 260 Fed. Appx. 108, 112 (10th Cir. 2008) ("In deciding Ms. Hamby's case, the ALJ concluded that she had many severe impairments at step two. He failed to consider the consequences of these impairments, however, in determining that Ms. Hamby had the RFC to perform a wide range of sedentary work.") [unpublished opinion]. Indeed, the ALJ devoted much of his discussion at step four to questioning his determination at step two, *i. e.*, the severity of these impairments, and further rejected most of the opinions related to her mental impairments because they were based on subjective complaints he rejected. *See McCleave v. Colvin*, 2013 WL 4840477, at *6 n.6 (W.D. Okla. Sept. 10, 2013) ("Additionally, the ALJ found Plaintiff's subjective complaints not credible in part because of evidence of her noncompliance with prescribed psychotropic medications. However, the ALJ did not consider whether Plaintiff had an acceptable reason for failing to follow her prescribed treatment, *which could include her bipolar disorder*.") [emphasis added], *citing* 20 C.F.R. §§ 404.1530(c), 416.930(c) *and Jelinek v. Astrue*, 662 F.3d 805, 814 (7th Cir. 2011) ("ALJ's assessing claimants with bipolar disorder must consider

possible alternative explanations before concluding that non-compliance with medication supports an adverse credibility inference."). In particular, the ALJ should explain how the claimant's problems with impulse control and responding with violence are somehow accounted for in her RFC and he is not entitled to ignore this evidence.

Furthermore, "[a]n ALJ must evaluate every medical opinion in the record, although the weight given each opinion will vary according to the relationship between the disability claimant and the medical professional. . . . An ALJ must also consider a series of specific factors in determining what weight to give any medical opinion." *Hamlin v. Barnhart*, 365 F.3d 1208, 1215 (10th Cir. 2004) [internal citation omitted] [emphasis added], *citing Goatcher v. United States Department of Health & Human Services*, 52 F.3d 288, 290 (10th Cir. 1995). Those factors are: (i) the length of the treatment relationship and the frequency of examination; (ii) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (iii) the degree to which the physician's opinion is supported by relevant evidence; (iv) consistency between the opinion and the record as a whole; (v) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (vi) other factors brought to the ALJ's attention which tend to support or contradict the opinion. *Watkins,* 350 F.3d at 1300-01, *citing Drapeau v. Massanari,* 255 F.3d 1211, 1213 (10th Cir. 2001) [quotation omitted]. Medical opinions from a treating physician are also entitled to controlling weight if they are "'well-supported by medically acceptable clinical and laboratory diagnostic techniques . . . [and] consistent with other substantial evidence in the record.'" *See Langley v. Barnhart*, 373 F.3d 1116, 1119 (10th

Cir. 2004), *quoting Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th Cir. 2003). Even if a treating physician's opinion is not entitled to controlling weight, the ALJ must determine the proper weight to give it by analyzing the factors set forth in 20 C.F.R. § 416.927. *Langley*, 373 F.3d at 1119 ("Even if a treating physician's opinion is not entitled to controlling weight, '[t]reating source medical opinions are still entitled to deference and must be weighed using all of the factors provided in § [416.927].'"), *quoting* Soc. Sec. R. 96-2p, 1996 WL 374188, at *4 (July 2, 1996). Finally, if the ALJ decides to reject a treating physician's opinions entirely, "he must . . . give specific, legitimate reasons for doing so[,]" *Watkins*, 350 F.3d at 1301 [quotation marks omitted; citation omitted], so it is "clear to any subsequent reviewers the weight he gave to the treating source's medical opinion and the reasons for that weight." *Watkins*, 350 F.3d at 1300 [quotation omitted].

In this case, the ALJ thoroughly summarized the claimant's testimony as well as the medical evidence in the record (Tr. 510-521). As to her mental health treatment, he summarized: (i) the claimant's own testimony regarding her mental health; (ii) the testimony of the physicians who testified at the second administrative hearing, Dr. Cole and Dr. Clark; (iii) Dr. Shaver's consultative exam report; (iv) her mental health record from Bill Willis Mental Health; (v) Mr. Sago's MSS; (vi) Dr. Dulowski's treatment record; (vii) Dr. Jenkins's MSS; and (viii) Dr. Hickman's MSS (Tr. 22-23). The ALJ stated that Dr. Cole and Dr. Clark's opinions had been "carefully considered and are consistent with the provided [RFC]," without any further analysis (Tr. 512). Additionally, the ALJ stated that Dr. Dulowski's MSS was unsupported by the overall record, then further faulted his referrals to specialists by stating he "clearly felt specialists

would better serve claimant for her conditions, yet inexplicably he felt comfortable issuing an opinion of inability to work based on these conditions" (Tr. 517). The ALJ then found Dr. Jenkins's opinions "deficient, without supportive medical documentation [and] based on only subjective complaints" (Tr. 519). He then questioned the claimant's report that she had broken her sister's arm during a fit of rage, because there were no medical records from *the sister* to substantiate this claim (Tr. 519). He concluded that "even if" she had broken her sister's arm, it was "not indicative of an inability to perform work activity which would require to public contact" (Tr. 519). He then gave Dr. Hickman's consultative examination findings "little weight," particularly his assessment that the claimant met a listing, because his opinion was "clearly based primarily on the claimant's subjective complaints" (Tr. 520). In sum, the ALJ rejected every opinion of her examining and consultative physicians, in favor of nonexamining physicians' opinions, while engaging in improper picking and choosing. *See Hardman v. Barnhart*, 362 F.3d 676, 681 (10th Cir. 2004) ("It is improper for the ALJ to pick and choose among medical reports, using portions of evidence favorable to his position while ignoring other evidence.").

Social Security regulations likewise provide for the proper consideration of "other source" opinions such as that provided by Mr. Sago herein. *See, e. g., Frantz v. Astrue*, 509 F.3d 1299, 1302 (10th Cir. 2007) (noting that other source opinions should be evaluated with the relevant evidence "on key issues such as impairment severity and functional effects" under the factors in 20 C.F.R. §§ 404.1527, 416.927), *quoting* Soc. Sec. Rul. 06-03p, 2006 WL 2329939 at *3, *6 (Aug. 9, 2006) ("[T]he adjudicator

generally should explain the weight given to opinions from these 'other sources,' or otherwise ensure that the discussion of the evidence in the determination or decision allows a claimant or subsequent reviewer to follow the adjudicator's reasoning, when such opinions may have an effect on the outcome of the case."). The factors for evaluating opinion evidence from "other sources" include: (i) the length of the relationship and frequency of contact; (ii) whether the opinion is consistent with other evidence; (iii) the extent the source provides relevant supporting evidence; (iv) how well the source's opinion is explained; (v) whether claimant's impairment is related to a source's specialty or area of expertise; and (vi) any other supporting or refuting factors. *See* Soc. Sec. Rul. 06-03p at *4-5; 20 C.F.R. § 404.1527(d). The ALJ performed no such analysis here, instead summarizing it without analysis, and there is no indication that the ALJ properly weighed these factors in his analysis. *See, e. g., Anderson v. Astrue*, 319 Fed. Appx. 712, 718 (10th Cir. 2009) ("Although the ALJ's decision need not include an *explicit discussion* of each factor, the record must reflect that the ALJ *considered* every factor in the weight calculation.") [emphasis in original].

Because the ALJ failed to properly analyze evidence of record as to the claimant's mental limitations, the Commissioner's decision must be reversed and the case remanded for further analysis by the ALJ. If such analysis results in adjustments to the claimant's RFC, the ALJ should re-determine what the claimant can perform, if any, and ultimately whether she is disabled.

**Conclusion**

The undersigned Magistrate Judge hereby PROPOSES a finding by the Court that correct legal standards were not applied by the ALJ, and the Commissioner's decision is therefore not supported by substantial evidence. The undersigned Magistrate Judge thus RECOMMENDS that the Court reverse the decision of the Commissioner and remand the case for further proceedings. Any objections to this Report and Recommendation must be filed within fourteen days. *See* Fed. R. Civ. P. 72(b).

**DATED** this 31st day of August, 2016.

_____
**STEVEN P. SHREDER**
**UNITED STATES MAGISTRATE JUDGE**